# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

LELAND WAYNE STEWARD,           )
                                )
                    Petitioner,)
                                )
           v.                   )        No. CIV-04-350-S
                                )
RANDALL G. WORKMAN,             )
                                )
                    Respondent.)

## OPINION AND ORDER

Petitioner, an inmate in the custody of the Oklahoma
Department of Corrections, currently incarcerated at the Lexington
Correctional Center in Lexington, Oklahoma filed this writ of
habeas corpus.  In his writ, Petitioner alleges the following
grounds for relief: Petitioner is being denied the basic tools,
original records and transcripts needed to present the collateral
appeal; Petitioner is being denied access to appointment of
counsel to perfect his collateral proceedings and to have a
conflict free counsel appointed; the evidence seized by Agent
Ronald Wheat was illegally gathered without a warrant and should
have been suppressed; Petitioner was not arraigned nor placed on
notice of the charges against him, nor granted a bail hearing and
languished in jail without counsel; Petitioner was mentally
incompetent to proceed and was not afforded the services of a
psychiatrist or the effective assistance of counsel denying due
process; Petitioner was denied a preliminary hearing, being put on
notice of the charges and elements he had to defend against;
Petitioner was not present at the motions hearing, a critical
stage of the proceeding, evidence was allowed to be presented that
was inadmissable; Petitioner received ineffective assistance of
counsel at both pre-trial/trial and on appeal; Petitioner is being

1

denied access to the courts by inadequate law libraries within the
Oklahoma Department of Corrections, no trained legal assistance
and by the denial of the courts in providing the original records
and transcripts of this proceeding with no appointment of counsel
for these collateral proceedings; the convictions for four counts
of first degree felony murder were not supported by the evidence
because the state failed to prove either that the fire was
deliberately set or that appellant was responsible for setting the
fire. Accordingly, these convictions are in violation of the
Fourteenth Amendment of the United States Constitution and Article
II, Sec. 7 of the Oklahoma Constitution; The trial court committed
reversible error by allowing the state to introduce evidence of
other crimes and bad acts alleged to have been committed by
Petitioner which had nothing to do with the offense in question,
and which were not proven by clear and convincing evidence. By
admitting the other crimes evidence, the trial court violated
Petitioner's rights under the Eighth and Fourteenth Amendments to
the United States Constitution and Article II, Sec. 7 and 9 of the
Oklahoma Constitution; The admission of hearsay statements
attributed to the victim Amanda Steward that she took her children
into the bathroom of their home when she and Petitioner were
having arguments constituted plain error, violating Petitioner's
rights under the Sixth and Fourteenth Amendments of the United
States Constitution and Article II, Sec. 7 and 20 of the Oklahoma
Constitution; The admission of Petitioner's statements to the
police on December 19, 2001, violated Petitioner's rights under
the Sixth and Fourteenth Amendments of the United States
Constitution and Article II Sec. 6 and 20 of the Oklahoma
Constitution, because the state failed to show that the Petitioner
knowingly and intelligently waived his constitutional rights or
that his statements were voluntarily given and the accumulation of
error in this case deprived appellant of due process of law and

necessitates reversal pursuant to the Fourteenth Amendment to the
United States Constitution and Article II Sec. 7 of the Oklahoma
Constitution.

## I.  Grounds One and Nine

In his first ground for relief Petitioner claims he needed
the trial transcripts and original record to perfect his post-
conviction and habeas appeals. Petitioner has twice motioned the
state district court for these records and was twice denied his
request. Petitioner does state he did have the original records
and transcript for his direct appeal.

A trial transcript is only a matter of right for an indigent
criminal defendant on direct appeal.  Defendants pursuing
"collateral relief do not have unlimited access to trial
transcripts." Sistrunk v. United States, 992 F.2d 258, 260 (10th
Cir. 1993) and Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir.
1992)(holding that on a Sec. 2255 a Petitioner seeking relief must
show his claim is not frivolous before the court is required to
provide him with a free transcript).  It is confessed by plaintiff
that he was provided the entire record for his direct appeal.  In
that appeal he raised five grounds for appeal. In his post-
conviction and habeas petition, he raised an additional nine
grounds for relief.  Thus, his ability to present his claims has
not been hindered by his inability to access his records.

To the extent Petitioner is appealing the state court's
denial of his records request, this issue is not reviewable in a
federal habeas proceeding. The denial of Petitioner's request for
records was based on state law grounds.  Habeas review is to
correct violations of federal constitutional law, not state law.

3

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241 and Rose v. Hodges, 423 U.S. 19, 21 (1995) (per curium)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." Beeler v. Crouse, 332 F.2d 783 (10th Cir. 1964) (citing Teague v. Looney, 268 F.2d 506 (10th Cir. 1959)). Petitioner has made no argument as to why the state court's denial of his records request was a violation of any law or constitutional right. He just simply notes that his request was denied and he needs the records for post-conviction and habeas proceedings. Here, the court finds Petitioner has failed to present an argument supporting federal habeas relief.

In his ninth ground for relief Petitioner asserts he has been denied access to the courts because of the lack of access to legal assistants and law library inadequacies. He alleges the law library is inadequate and out of date. He also alleges the legal assistants are not adequately trained. He argues this had interfered with his ability to file petitions.

As the Supreme Court has held within the "access to courts" provision of the Fourteenth Amendment there is no "independent right of access to a law library or legal assistance." Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996). In order to succeed on such a claim a Petitioner must prove actual injury by showing the denial of legal resources hindered his efforts to pursue a legitimate claim. Lewis v. Casey, 518 U.S. 343, 351 (1996). The

4

<u>Lewis</u> court specifically stated the inmate cannot establish actual injury "simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." <u>Id</u>. Petitioner has failed to establish that he has suffered any injury based upon the alleged inadequate library system.  In fact, Petitioner has raised 15 claims in this habeas claim.  Petitioner has also timely filed a direct appeal and post-conviction petition.  In addition, Petitioner has filed this habeas action.  Thus, Petitioner's claim regarding access to the courts must fail because he failed to establish actual injury.

<u>Proposition II</u>

In this second ground of relief, Petitioner alleges he is being denied access to court-appointed counsel in his state and federal collateral proceedings and therefore being denied due process. He claims that he is being treated differently than an inmate sentenced to death by execution.

First, there is no constitutional right to an attorney in state post-conviction proceedings. <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991);  <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1222 (10th Cir. 2000) and <u>Hatch v. State</u>, 924 P.2d 284, 294 (Okla. Crim. App. 1996).  Thus, the denial of a court-appointed attorney for Petitioner in his state post-conviction proceeding was not a constitutional violation.  Further, there is no constitutional right to counsel in federal habeas proceedings either. <u>Tapia v. Lemaster</u>, 172 F.3d 1193, 1196 (10th Cir. 1999).  Thus, denial of court-appointed counsel for Petitioner's habeas claims and state post-conviction action was not unconstitutional and must fail as a ground of relief in this habeas action.

## Proposition III.

In his petition, Petitioner alleges that evidence collected from his home was the result of an illegal search and therefore was inadmissable; Petitioner was neither arraigned or notified of the charges against him; trial counsel was ineffective for failing to present a psychiatric expert at a competency hearing and Petitioner was not competent to proceed; Petitioner was denied the right to a preliminary hearing and notice of the charges against him; Petitioner was denied the right to be present at an August 14, 2002, motion hearing, and therefore evidence determined admissible in that hearing should not have been allowed; and Petitioner received ineffective assistance of trial counsel. Petitioner failed to raise these issues on direct appeal even though he could have. As a result, Petitioner has defaulted all of these claims pursuant to 22 O.S.A. Sec. 1086, an independent and adequate state procedural rule. The Oklahoma Court of Criminal Appeals declined to address the substance of these claims on post-conviction since Petitioner failed to raise them on direct appeal and provided no sufficient reason for doing so. Thus, Petitioner is procedurally barred from presenting these claims in the instant proceeding.

The law on this issue is clear:

> This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice'. <u>Cannon v. Gibson</u>, 259 F.3d 1253, 1265 (10th Cir. 2001)(internal citations omitted) and <u>Coleman v. Thompson</u>, 501 U.S. 722, 749-750 (1991).

For a state procedural ground to be independent, it "must rely on state law, rather than federal law." Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999). Secondly, to be considered adequate the state courts must apply the procedural default rule "regularly and consistently". Spears v. Mullin, 343 F.3d 1215, 1254 (10th Cir. 2003). These requirements are satisfied in the present case.

First, the Court of Criminal Appeals "clearly and expressly" applied the Oklahoma Procedural default rule, 22 O.S.A. Sec. 1086, to preclude Petitioner's claims. Harris v. Reed, 489 U.S. 255, 263 (1989). The court relied solely on Oklahoma's procedural default rules in this decision. Secondly, the Oklahoma Court of Criminal Appeals applies the procedural default rule consistently and on an even-handed basis. Medlock v. Ward, 200 F.3d 1314, 1323, n. 8 (10th Cir. 2000) and Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993). Because Petitioner had defaulted these claims they are precluded from review by this court unless he can show both cause and prejudice, or, alternatively, that a fundamental miscarriage of justice will result. Petitioner has not made such as showing.

To show cause, the Petitioner must show the procedural default was caused by "some objective factor, external to Petitioner, not fairly attributable to him, that impeded his efforts to comply with the procedural rule in question." Coleman at 753. "Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." Mitchell v. Gibson, 262 F.3d 1036, 1057 (10th Cir. 2001).

To the extent Petitioner asserts his appellate counsel was ineffective in that he should have raised the legality of the search, Petitioner's incompetency, trial counsel's failure to call

a psychiatrist, trial counsel's failure to timely hire an expert and request a hearing on scientific evidence, these allegations are discussed in the next section and for the reasons cited therein, this court has found that Petitioner has failed to establish ineffective assistance of appellate counsel. As such, this is not a cause for procedurally defaulting these claims.

Petitioner provides no reason for failing to raise his remaining claims, all of which are pretrial issues, on direct appeal. Therefore, Petitioner here too has failed to show cause.

To make a showing of a fundamental miscarriage of justice, a Petitioner must "supplement his habeas claim with a colorable showing of factual innocence." <u>Medlock v. Ward</u>, 200 F.3d 1314, 1323 (10th Cir. 2000). Factual innocence means that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." <u>Demarest v. Price</u>, 130 F.3d 922, 942 (10th Cir. 1997). Petitioner has failed to make a showing of factual innocence. As a result, this court finds the Petitioner's claim for habeas relief on these grounds must fail.

<u>Proposition IV</u>

Petitioner has alleged an effective assistance of appellate counsel claim. The United States Supreme Court has established a two-prong test to determine ineffective assistance of counsel. First, a defendant must show his counsel's performance was deficient to the point that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). This court must also give great deference to counsel's decision to omit an issue from an appeal and reverse only if counsel fails to argue a

dead-bang winner.  A dead bang winner meaning an issue which "is obvious from the trial record and would have resulted in a reversal on appeal." <u>Boyd v. Ward</u>, 179 F.3d 904, 914-15 (10th Cir. 1999).  Second, the Petitioner must show actual prejudice to him. <u>Strickland</u> at 693. This requires Petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> at 695. The burden is on Petitioner to overcome this presumption.  <u>Id</u>.

### A. Failure to Raise Ineffective Trial Counsel<br>Claim regarding Other Crimes Evidence<br>and Amanda's Hearsay statement.

Petitioner argues his appellate counsel was ineffective for failing to effectively raise ineffective trial counsel on direct appeal.  To the contrary, appellate counsel did raise this issue on appeal, citing trial counsel's failure to object to the other crimes evidence and to hearsay statements.  The Court of Criminal Appeals, after looking at the underlying issues separately and concluding in both instances the statements were properly admitted, found trial counsel's performance was not ineffective and Petitioner failed to show prejudice or that he was denied a fair trial.  Because appellate counsel raised these issues, this ground is without merit.

### B.  Failure to Raise Fourth Amendment Claim

Petitioner asserts his appellate counsel should have argued on appeal that his Fourth Amendment rights were violated when fire investigators entered the premises without a warrant and seized

and/or photographed evidence.  Petitioner argues this illegally
seized evidence should have been suppressed.

The Supreme Court has held the constitutionality of a
warrantless entry onto fire-damaged premises turns on three
factors:

> (1) whether there are legitimate privacy interests in
> the fire-damaged property that are protected by the
> Fourth Amendment; (2) whether exigent circumstances
> justify the government intrusion regardless of any
> reasonable expectations of privacy; and (3) whether the
> object of the search is to determine the cause of the
> fire or to gather evidence of criminal activity.
> <u>Michigan v. Clifford</u>, 464 U.S. 287, 292 (1984).

In analyzing whether a person has a "legitimate privacy
interest" in the fire-damaged premises, the court noted this
expectation varies with the type of property, amount of damage,
any continued use of the premises, and efforts by the owner to
secure the premises.  The court did note however, that "Some fires
may be so devastating that no reasonable privacy interests remain
in the ash and ruins, regardless of the owner's subjective
expectations." <u>Id</u>. at 292.  The test is "Whether the expectation
is one that society is prepared to recognize as 'reasonable'". <u>Id</u>.
(citing <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967)).   In the
case at bar, the warrant requirement does not apply because
Petitioner could have no legitimate privacy interest in what was
left of the trailer.  By the time the fire was subdued, there was
simply nothing left from which to derive such an expectation.  The
trailer was a heap of twisted metal, beams, parts of the trailer,
and ashes were all that remained. Petitioner has failed to
establish a Fourth Amendment violation.  Furthermore, even if
Petitioner would have had an objective expectation of privacy,
under the exigent circumstances exception to the warrant

requirement, fire officials do not need a warrant before entering a premises and staying a reasonable time to determine the cause and origin of a fire. <u>United States v. Finnigin</u>, 113 F.3d 1182, 1185 (10th Cir. 1997).  In the case at bar, Agent Wheat examined the area several hours after the fire occurred but had to return two days later when he did not have "smoke and heat and coals to deal with." It appears Agent Wheat's entry to the property was reasonable in an effort to determine the origins of the fire.

Thus, appellate counsel was not unreasonable in not raising this argument on appeal.  Further, even if it would have been considered error to omit this issue from the appeal, Petitioner cannot establish actual prejudice.  Accordingly, this ground for relief must also fail.

<u>C. Failure to Raise Issue of Petitioner's
Competency and Hiring of Expert</u>

In his habeas petition, Petitioner contends appellate counsel should have raised on appeal that he was incompetent to proceed to trial and that trial counsel was ineffective for not retaining an expert for the competency hearing.

To the extent Petitioner claims he was not afforded procedural due process by the trial court, and that the appellate counsel should have argued such, Petitioner carries the burden of establishing "that the state trial judge ignored facts raising a bona fide doubt regarding the Petitioner's competency to stand trial." <u>Mitchell v. Gibson</u>, 262 F.3d 1036, 1047 (10th Cir. 2001). A hearing on the State's Application to Determine Competency was held on February 20, 2002.  There the trial court found doubt was raised regarding Petitioner's competency and ordered a competency

examination.  Thus, it appears to this court Petitioner was given adequate due process.  Doubt was raised about his competency through a hearing and a competency evaluation was rendered.

To the extent Petitioner asserts he was not afforded substantive due process, that is, that he was actually incompetent to proceed, "the burden is on the Petitioner to establish by a preponderance of the evidence that he was in fact incompetent to proceed," that is, that he lacked the ability to consult with his lawyers with a reasonable degree of rational understanding and lacked rational and factual understanding of the proceedings against him.  <u>Miles v. Dorsey</u>, 61 F.3d 1459, 1472 (10th Cir. 1995). Petitioner has failed to meet this burden.  In the first competency hearing, Petitioner's lawyer, Sylas Lyman, told the court that he met with Petitioner, they discussed the charges, the role of the court, counsel and parties, and discussed Petitioner's questions.  Mr. Lyman noted Petitioner's questions and answers were rational and "as appropriate as any client [he] ever had, maybe more so." He noted the questions related to the criminal proceeding and Petitioner clearly seemed to understand the answers.  In fact, Mr. Lyman directly addressed the court on the issue of Petitioner's competency and stated that he clearly believed he was competent. Ultimately, Mr. Lyman advised the court he believed Petitioner understood the situation and could rationally assist him in preparing for trial.

In the second proceeding one week later, the state and the defense stipulated to Dr. Connie Glasco's report which stated Petitioner appeared to understand the nature of the charges and was able to consult with his lawyer.

The facts in the record indicate Petitioner had the present

ability to consult with his lawyer.  Furthermore, there is no
basis to conclude that the hiring of another expert would have
altered the outcome of the competency proceeding.  Petitioner has
come forward with no credible evidence that Dr. Glasco, the mental
expert used, was biased in her report.

On direct appeal, the Court of Criminal Appeals will uphold a
determination of competency if there "is any competent evidence
reasonably supporting the trier of fact." Ryder v. State, 83 P.3d
856, 869 (Okla. Crim. App. 2004). It appears there was sufficient
evidence in the record to supported the trial court's finding of
competency.  Thus, it would have not been proper for appellate
counsel to raise this issue on appeal, given the standard for
review. Further, Petitioner has not established that calling
another expert would have changed the outcome of his competency
hearing.

### D. Failure to Raise Issues of Timeliness of Hiring Defense Expert and Objecting to "Junk Science" presented.

Petitioner asserts appellate counsel was ineffective for
failing to raise on appeal the fact that trial counsel failed to
develop facts until July 2002, one month before trial and failed
to object to "junk science" presented by the State.

The record reveals the following. Leroy Terry, the defense
fire expert, testified that he visited the scene of the fire in
June 2002, but he had begun his investigation of the fire much
earlier.  Mr. Terry testified that his preference is to start
investigating "while it's burning" but that was not possible in
this case.  He said in this case he started his investigation by
collecting data prior to surveiling the scene of the fire, rather

than proceeding directly to the scene. To do this, Mr. Terry collected Agent Wheat's report, copies of Agent Wheat's photographs, and was briefed by defense attorneys. In addition, Mr. Terry reviewed the medical examiner's report, Petitioner's statement to police, and the preliminary hearing transcript. Mr. Terry reviewed all the previous documents first so that when he did visit the scene he could put it into context with the other information. Thus, while it appears there may have been a delay in Mr. Terry's visit to the site, he was still working on the case doing an investigation even though he had not visited the site.

Further, there is no evidence to indicate that Mr. Terry's investigation was hindered by an so-called delay in surveilling the scene. Mr. Terry testified the structure of the trailer was still intact when he did his investigation, although some items were missing. From his investigation he was able to conclude the stove was improperly vented. He was able to review photos of the steps as well as one remaining at the scene and provide an alternative explanation for the burn pattern. After looking at the I-beams it was his opinion that the fire was very hot, not that it was necessarily deliberately set. He also found electrical faults in the lamp cord. Thus, there is no evidence of a delay by the defense expert in investigating the scene and even if there was a delay it does not appear to have affected Mr. Terry's investigation.

Petitioner also argues his counsel should have objected to the State's scientific evidence. Petitioner simply fails to explain why this objection would have been valid. He simply fails to explain why this evidence should have been excluded. This court finds appellate counsel was not unreasonable for not raising these issues on appeal. As such, the court finds no grounds for relief

on these claims.

Petitioner has also alleged his trial counsel and appellate counsel had a conflict of interest because they were both employed by the public defender's office.  In order to be successful on this claim, Petitioner must "demonstrate actual conflict, not just the possibility of one." Pickens v State, 910 P.2d 1063, 1069 (Okla. Crim. App. 1996).  Both the Oklahoma courts and the Tenth Circuit have addressed the same scenario Petitioner raises, that is, where trial and appellate counsel work for the public defender's office.  Smallwood v. Gibson, 191 F.3d 1257, 1270 (10th Cir. 1999) and Pickens at 1069.  Both cases found there is no conflict when both attorneys are from the same office.  Further, in this case, the appellate counsel raised five propositions on appeal warranted by the record including two ineffective trial counsel claims.

This court finds no merit to Petitioner's claim regarding ineffective assistance of trial counsel or appellate counsel. Accordingly, this claim for relief must also fail.

<u>Proposition V</u>.

Petitioner has alleged the evidence presented at trial was constitutionally insufficient for a rational jury to find he was guilty of First Degree Murder.

The facts at trial were as follows.  In the early morning hours of December 1, 2001, Petitioner's wife Amanda Steward and their three children, Cathryn, Christopher, and Nora ages 7,5 and 4 died in a fast burning fire that ravaged their mobile home. Amanda and two of the children were found barricaded inside the

bathroom of the trailer, which was located in the middle of the trailer and from which there was no exit.  The youngest child Nora was found just outside the bathroom door.  The four died of smoke inhalation.  Petitioner was the only occupant to get out. He sustained a minor burn and a cut on one hand.

At 5:00 a.m., neighbors Don and Brenda Adams were awakened to Petitioner pounding on there door.  He told them his trailer was on fire and asked them to call the fire department. He said he was going back to "get his family out". By the time the fire and police arrived, the trailer was totally engulfed and Petitioner's family was still inside.

Petitioner told Officer Rodney Faulkenberry at the scene that he and his wife went to bed around 2:00 a.m. and that around 3:00 a.m. she awoke and said she was cold and was going to build a fire in the wood-burning stove. The next thing he recalled was Amanda yelling that the trailer was on fire. According to Petitioner, Amanda then told him to get out and she would retrieve the children. Petitioner kicked out the Master bedroom window and jumped.  When Amanda did not come out, Petitioner allegedly tried to get back in through the now broken window.  All he saw was smoke, so he did not go in.  He ran around to the children's bedroom window and broke it, yelling for the kids. They did not come out either.

Lead fire investigator Gene Wheat arrived at the scene around 6:30 a.m.  Agent Wheat was an experienced fire and arson investigator who had investigated hundreds of fires, many of them mobile home fires.  Petitioner told Agent Wheat that he tried to get the children out by pulling their bed covers out through their window, hoping they would be on top of their covers.  He also said

he saw Amanda inside the trailer as it was burning.

On December 19th, Agent Wheat interviewed Petitioner in
Missouri where Petitioner was staying with family.  On this
occasion, however, Petitioner told Agent Wheat that after he awoke
to Amanda's screaming he walked half way down the hall and saw his
wife on fire, trying to remove her shirt.  At that point
Petitioner was standing in front of the children's bedroom.
According to Petitioner, his wife, then on fire, told him to go
and get help and that she would get the children.  Petitioner then
left the trailer to get help.

The evidence left at the scene contradicted Petitioner's
account.  For instance, there was no glass found outside the
master bedroom window on the ground.  The only glass found was
inside the trailer.  The glass was black on both sides, indicating
the window was intact while it collected soot, then it was broken.
In fact, there was no sign whatsoever of any forcible exit from
the trailer.  There was no sign of glass cuts on Petitioner, other
than a 1 cmm cut on his thumb, despite his jumping out and back in
the trailer through a window that still contained glass shards.

In Agent Wheat's opinion the wood burning stove was not the
cause of the fire.  The wood inside was only partially burned,
with some left intact.  Only the front two legs of the stove were
broken off, indicting the fire burned around the stove, not in it,
and finally burned the floor in front of the stove out to where it
gave way. Agent Wheat testified that the fire was so intensely
hot, the I-beam, or frame of the home underneath the living room,
was distorted and damaged, which is not typically seen in mobile
home fires.  The extent of the damage indicated extremely high
heat in that location and the use of accelerant which made it get

that hot.  Two places tested positive for the presence of fire accelerant, the front steps and an area near the refrigerator. The samples taken from these areas confirmed the liquid was a petroleum distillate ignitable liquid, commonly found in lighter fluid and mineral spirits.  Three cans were found inside the trailer.  The cans resembled those containing lighter fluid and mineral spirits.  Three cans were found inside the trailer, cans that resembled those containing lighter fluid or thinner.  Agent Wheat testified the steps were a logical place to start a fire since they were below the trailer and fire burns upward.  Agent Wheat also testified  it made no sense that if Petitioner ran half-way down the hall, which would have placed him directly in front of the children's room, he would have backtracked to the end of the trailer to jump out the window of the master bedroom. Instead, he could have exited through the children's window with the children.  Propane, faulty electrical wiring, the electric heater, and the stove were all ruled out as possible causes of the fire.  Based on the evidence at the scene, Agent Wheat's opinion on the cause of the fire was arson.

The defense presented it own arson expert, who testified that because he could not rule out other potential causes of the fire, he could not say it was arson. However, he could not rule out the fire was arson.  He also admitted that he was not aware of Petitioner's remarks to others concerning his ability to set fires, and was not sure how this knowledge might have impacted his decision.

In the days before the fire, Petitioner made several comments to friends about such a fire occurring in the trailer.  Several times he commented he was worried Amanda would "burn the house down" because she always was building fires in the stove and using

alcohol to start them. He said that she probably did this to set the "accidental fire" seed in everyone's mind. Petitioner repeatedly told Agent Wheat that Amanda built a fire in the stove that night. Petitioner also told others that he could burn up a house "just like that" and he knew how to start a fire without anyone knowing how he did it. He also told of how he used to set fires in Missouri and how he had a child and wife who died in a fire.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." Case v. Mondagon, 887 F. 2d 1388, 1392 (10th Cir. 1989), cert. denied, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court has repeatedly emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." Wright v. West, 505 U.S. 277, 296 (1992) (citing Jackson, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing United States v. Edmondson, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be

sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." <u>Beachum v. Tansy</u>, 903 F.2d 1321, 1332 (10th Cir.), <u>cert. denied</u>, 498 U.S. 904 (1990) (citing <u>United States v. Troutman</u>, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain Petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime. The applicable statute provides:

> A. A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.
>
> B. A person also commits the crime of murder in the first degree, regardless of malice, when that person or any other person takes the life of a human being during, of if the death of a human being results from ....first degree arson...

Okla. Stat. tit. 21, § 701.7.

After careful review, the court finds the evidence was sufficient under the standard of <u>Jackson v. Virginia</u>.

<u>Proprosition VI.</u>

Petitioner also claims the other crimes evidence, Amanda's hearsay statements, and his statements to the police were improperly introduced at trial, thus rendering his trial fundamentally unfair. Erroneous evidentiary rulings are not grounds for federal habeas relief unless the rulings render the

state proceedings are so fundamentally unfair as to violate due process. <u>Williamson v. Ward</u>, 110 F.3d 1508, 1522-23 (10th Cir. 1997). Therefore evidentiary objections are merely issues of state law not cognizable in a federal habeas proceeding. <u>Revilla v. Gibson</u>, 283 F.3d 1203, 1212 (10th Cir. 2002). Such an issue is only prime for habeas review when the alleged error is so "grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." <u>Id</u>. Even when a Petitioner established error rising to a constitutional level, this court may not grant relief unless it finds the error was not harmless, that is, the error had a "substantial and injurious effect in determining the jury's verdict." <u>Duvall v. Reynolds</u>, 139 F.3d 768, 788 (10th Cir. 1998). This determination requires analysis of the error in the context of the record and the "totality of the evidence presented." <u>Scrivner v. Tansy</u>, 68 F.3d 1234, 1240 (10th Cir. 1995).

## A. Other Crimes

Petitioner asserts the trial court erred in allowing statements about his setting fires in Missouri and knowing how to set fires. Petitioner raised this issue on direct appeal, where the Court of Criminal Appeals, noting the defense counsel failed to object to the admission of these statements, reviewed for plain error. <u>Oxley v. State</u>, 941 P.2d 520, 524 (Okla. Crim. App 1994). The Oklahoma Court of Criminal Appeals found these statements were relevant to show motive, intent, preparation, and absence of mistake. This finding is not contrary to or an unreasonable application of law or facts.

Under the Oklahoma rules of evidence, evidence of other crimes is generally inadmissible; however, it is "admissible for

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." 12 O.S.A. Sec. 2404 (B). When the State plans to introduce evidence of other crimes, it must follow the guidelines for introducing such evidence as set forth in Burks v. State, 594 P.2d 771, 774-75 (Okla. Crim. App. 1979). Further, the Oklahoma Court of Criminal Appeals has held that the State:

> is entitled to present statements or admissions made by a defendant, whether they are truthful, untruthful, or self-contradictory,....A defendant is not insulated from the introduction of his own confessions against him merely because they contain known or suspected contradictions or half-truths. The prosecution, by introducing the defendant's own statements against him, does not vouch for the truthfulness of the defendant. McElmurry v. State, 60 P.3d 4, 19 (Okla. Crim. App. 2002).

The court finds the introduction of statements made by Petitioner about having a family who died in a fire and that he knew how to set fires and did so in Missouri was entirely proper in light of the above criteria.

The State timely filed a Burks notice. The central issue in the murder trial was whether the fire was accidental or arson, and if arson, whether Petitioner was the perpetrator. Therefore, the statements were clearly probative to show intent, motive, plan or preparation, and lack of accident.

Furthermore, although Petitioner's statements may have implicated him in other crimes, it is irrelevant whether his statements were true because they were his statements, and therefore admissible under Sec. 2801 (b)(2) and McElmurry at 19. The statements clearly showed Petitioner was obsessed with fire and burning things. The statements regarding a previous family

who died in a fire were also relevant because it showed he had fantasies about this type of thing.

Petitioner contends his statement that he intentionally set fires required corroboration. However, his statements simply were not the equivalent of a confession and in no way deserved due process protections afforded to confessions. First, admissions do "not rise to the level of confessions and do not require independent corroboration before their introduction to the jury." <u>Fontenot v. State</u>, 881 P.2d 69, 78 n. 11 (Okla. Crim. App. 1994). Further, his comments were concerned with prior arsons and not the crime for which he is charged and therefore fall completely outside the body of law requiring a confession to the crime charged be shown trustworthy before it is admitted. <u>Id</u>.

Accordingly, this court finds that there was no error in the admission of the previous criminal acts. The decision by the Oklahoma Court of Criminal Appeals was not contrary to or an unreasonable application of the law or facts.

## B. Statements of Amanda Stewart

Petitioner contends the trial court erred in allowing hearsay testimony about statements made by Amanda Stewart to a friend, Alvin Potter. Alvin Potter testified that Amanda had told him referring to Petitioner that "if it gets too bad....I just go in the house and take the kids and get in the bathroom and lock the door." Petitioner contends the statement was inadmissible because it was admitted to prove the truth of the matter asserted and because it recited a past act. No objection was made at trial and the Oklahoma Court of Criminal Appeals found them admissible under the state of mind exception to the

hearsay rule.

First, in homicide cases, when a statement is admitted which casts light on a future act of the decedent, rather than a past act, the statement is considered hearsay but is admissible under the state of mind exception to the hearsay rule. 12 O.S.A. Sec. 2803 (3) (2001). Secondly, although statements made by decedent about past acts of the defendant are not admissible under this exception, this is not true with respect to the decedent's statements about the decedent's past acts. <u>Moore v. State</u>, 761 P.2d 866, 870 (Okla. Crim. App. 1988).

As the Oklahoma Court of Criminal Appeals found, Amanda's statements did not refer to Petitioner's past acts, it referred to her then existing current state of mind and what she would do in the future in a certain situations "I just go" being the present tense. Based on the foregoing the Oklahoma Court of Criminal Appeals decision was not contrary to or an unreasonable application of the law or facts.

Finally, any error in admitting this particular statement in light of all the other evidence admitted was wholly harmless. Other evidence of discord between Petitioner and his wife was introduced and properly before the jury. Other statements where Amanda said she would take her kids to the bedroom if she and Petitioner were fighting were introduced, yet not objected to by the Petitioner.

## D. Petitioner's Statements to the Police

Petitioner contends the trial court erred in admitting testimony of his in-custody statements made to Agent Wheat on

December 19, 2001.  Petitioner does not contend that he was not
given his rights or was coerced by police in any way, rather, he
asserts that he was incompetent to give an interview and police
knew of his so-called mental instability.  In reviewing this
claim for plain error, the Oklahoma Court of Criminal Appeals
found the State satisfied its burden of showing that Petitioner
knowingly and voluntarily waived his Miranda rights and there was
no error in admitting the statement.

Waiver of Miranda rights must be knowing, voluntary, and
intelligent.  This inquiry has two dimensions.  Voluntary is the
"product of a free and deliberate choice rather than
intimidation, coercion, or deception." Moran v. Burbine, 475 U.S.
412, 421 (1986). There must also be "full awareness both of the
nature of the right being abandoned and the consequences of the
decision to abandon it." Id. In the end, the question is whether
the totality of the circumstances reveal an uncoerced choice and
requisite level of understanding. Moran at 421

In the case at bar, the voluntariness of Petitioner's
statement is not at issue.  There is no record that Petitioner
was pressured either physically or mentally to talk with agent
Wheat.  Agent Wheat testified at the motion to suppress hearing
that Petitioner voluntarily accompanied him to the Miller County
Sheriff's office to have the interview.  Agent Wheat also
testified that Petitioner willingly talked with him for about an
hour and fifteen minutes and answered questions when asked. The
evidence appears to suggest that Petitioner knew the rights he
was abandoning.  Petitioner initialed and signed an Interrogation
Advisement of Rights Form.  When Agent Wheat learned Petitioner
could not read very well, Agent Wheat read out loud to Petitioner
each of the rights, line by line, having Petitioner initial

beside each of those rights as they were read to him.  Agent Wheat also repeated the Miranda warnings at the beginning of Petitioner's taped statement.

At the conclusion of the interview, when it becomes apparent he was under arrest for his crimes, Petitioner became upset and threatened to kill himself. Based on this and Petitioner's behavior at the scene of the fire, Petitioner asserts police knew he was mentally unstable and that this makes his statement invalid.  However, Agent Wheat testified he believed Petitioner understood his rights and the nature of what was happening, and had no reason to believe otherwise.  Petitioner does not dispute that he was told his rights and signed this form, nor does he claim he does not recall doing so.

This court finds the totality of the circumstances show that Petitioner's statements to Agent Wheat were knowing and voluntary.

<u>Proposition VII.</u>

In his final proposition of error, Petitioner asks this Court to review his propositions in the context of cumulative error. Accordingly, there can be no cumulative error and this ground must also fail. Petitioner's Petition for Writ of Habeas Corpus is, in all respects, denied.

**IT IS SO ORDERED** this 7th day of September, 2007.

Frank H. Seay
United States District Judge